## IN EQUITY.

## CHARLES DANA *vs.* B. F.·ANGEL and B. F. SNOW.

Complainant having obtained a judgment at law against one of the respondents, took out execution thereon, which execution was returned *nulla bona.* Complainant then filed his bill in Equity, praying that the second respondent who was agent of the former, might be compelled to make discovery as to money securities and other property in his hands, belonging to his principal ; and that the same should be applied to the payment of complainant's judgment. The court granted the relief prayed for.

JUDGE ROBERTSON, acting as Chancellor, gave his decision as follows:

The complainant sets forth in his petition that, at the last July term of the Supreme Court, he obtained a judgment against the first named defendant, B. F. Angell, for the sum of three thousand one hundred and twenty dollars, with interest thereon from that date; that the said defendant, Angel, previous to his departure from this kingdom, appointed the other defendant, B. F. Snow, as his agent for the management of his affairs here; that about the 31st day of August last, the complainant caused an execution to be issued against the goods and chattels of B. F. Angel, which said execution has been returned *nulla bona* by the Marshal; that complainant has been unable to discover any property belonging to B. F. Angel, in this kingdom, that can be made available by any process of a court of law for the payment of complainant's judgment, but that he has ascertained that Capt. Snow has in his possession, as agent and attorney of Mr. Angel, sundry securities for money due and payable to him, which complainant submits are, and ought in equity to be made available for the payment of his demand. He therefore prays the court that the said defendant, B. F. Snow, may be required to make a full discovery as to the possession by him of any authority from the said Angel for the transaction of his business, and as to all securities for money, or other properties of any description belonging to him that may be within the possession or control of the said B. F. Snow; that he be decreed to lodge with the master of this court all such securities, &c., and that a receiver be appointed.

The defendant· B. F. Snow admits in his answer, made on his own behalf and on that of his principal, B. F. Angel, that the complainant obtained a judgment as set forth in his petition; that he, Snow, is the attorney in fact of the defendant Angel, to collect certain debts and liabilities due and owing to him, and to remit the proceeds to the United States, but not his agent for the transaction of his business generally; that he knows of no property in this kingdom, belonging to B. F. Angel, upon which a *fieri facias* could be levied, but admits that there are in his possession belonging to Angel, promissory notes to the amount of fifteen thousand seven hundred and fifty dollars, of which one thousand dollars is now due, and of which seven thousand dollars will become due and payable during the month of January next ensuing, and the balance at further dates; that he is not authorized by his principal to apply any part of the funds arising from said

securities to the payment of complainant's demand, but is willing to abide the order of the court touching any part of the same, objecting, however, to the appointment of a receiver, and the conversion of the securities into money by sale, as being expensive, unnecessary and inequitable towards his principal.

Upon the reading of the defendant's answer, the complainant's counsel waived his application for the appointment of a receiver, and the immediate conversion into money of so much of the securities as might be necessary to satisfy his demand, and moved the court to grant an order requiring the defendant, Snow, to collect and pay into court out of the securities first becoming due, a sum sufficient to cover the amount of complainant's judgment, together with interest and costs.

This is the first time, so far as I am aware, that a petition of this nature has been presented to this court. It becomes proper for me, therefore, although the point is conceded by counsel for defendants, to enquire into the question as to whether or not the relief sought by the complainant is within the chancery powers of this court to afford. The remedy so frequently applied and so well known under the laws of other countries as the trustee process, or process of garnishee, has no place in the laws of this kingdom; unless by a commission of bankruptcy, I know of no means by which a creditor can compel the discovery and application to his demand of the assets of his debtor in the possession of third parties and beyond the reach of a *fieri facias*. It may therefore frequently happen, in cases similar to the one now presented, that a defendant may have property lying within this kingdom, more than amply sufficient to pay any judgment obtained against him, without its being in the power of the creditor to obtain satisfaction of his claim out of such property, through any process that can be afforded him by our courts of law. That in such a case the creditor ought to have relief somewhere, is manifest. According to the plainest principles of justice and equity, every person ought to pay his honest debts; and if he is able but unwilling, the law ought to compel him to do so; but if courts of law, from any defect of power, are unable to afford an adequate remedy for that purpose, then we must turn to the court of chancery, and look for aid from thence. In the emphatic language of Woodworth, J., in the case of Hadden *vs.* Spader, 20 Johnson, 562, "It would be matter of surprise as well as regret, if in a system of jurisprudence that has been matured by the wisdom of ages, adequate remedies were not provided for the violation of every important civil right."

Lord Redesdale observed, in Boud *vs.* Hopkins, (1 Sch. & Lef. 420,) "Nothing is better settled in courts of equity, than that, where a title exists at law, and in conscience, and the effectual assertion of it at law is unconscientiously obstructed, relief should be given in equity; and that when a title exists in conscience, though there be none at law, relief should also, though in a different mode, be given in equity."

That a court of equity may, and ought to give relief in a case where the facts and circumstances are as they appear to be in the case now before me, I think may be considered as clearly established, both upon principle and express authority. (See Hendricks *vs.* Robinson, 2 Johnson Ch. Rep., p. 295. Hadden *vs.* Spader, 20

Johnson, p. 553, in which the court of errors affirmed the decision of the chancellor, and cases there cited; Doran *vs.* Simpson, 4 Vesey Jr. p. 650; and Scott *vs.* Scholey, 8 East, p. 467.

It is clear from the pleadings in this case, and from the Marshal's return of *nulla bona* endorsed on the writ of execution, that a *bona fide* effort has been made by the complainant to obtain satisfaction of his judgment by the only means afforded him on the common law side of this court, but that such effort has been wholly vain; while it is admitted by the answer of Capt. Snow, that he has in his possession, and in course of collection, securities for money, belonging to Mr. Angel, to an amount far exceeding that of the complainant's judgment. Unless this court, in the exercise of its equity powers, shall interpose in the complainant's behalf, there is no way under Heaven by which he can prevent the defendant's funds from being entirely removed to another country, according to the instructions left with his agent here, while the complainant's judgment, notwithstanding his right to payment, both at law and in conscience, thus becomes of no more use to him than so much waste paper. In such case there would be a manifest failure of justice.

The fact, too, that the property which has now been discovered consists altogether of choses in action, which cannot be taken under an execution at law, is a consideration of very great weight in favor of the complainant's right to the interposition of equity in his behalf. Had the defendant's answer discovered the existence of goods and chattels capable of being seized and sold under execution, the complainant might then be turned back to pursue his rights at law, content with the discovery, merely, and the same grounds would not exist in that case, to grant the specific relief we now feel constrained to afford him, by a decree to compel the application of the funds arising from the maturity of the money securities, to the satisfaction of his judgment.

It is easy to suppose a case where a debtor might if inclined to do so, which is not alleged however in the present instance, defraud his creditors to any amount to which his credit might extend, and beyond the power of relief, unless they can claim the aid of a court of equity.

In the fluctuating character of the foreign community at these islands, and in the absence from our laws of any trustee process, or other adequate remedy, I see powerful reasons calling for the assertion of a branch of equity jurisdiction, at once so just and reasonable in its nature, and calculated to be so eminently beneficial in its practical results.

The motion is granted.

Mr. Montgomery for the complainant.

Mr. Bates for the defendants.